UNITED STATES of America, Plaintiff,

v.

NEW HOLLAND MACHINE COM-PANY, Defendant.

Civ. No. 13728.

United States District Court, E. D. Pennsylvania.

Jan. 20, 1955.

W. Wilson White, U. S. Atty., Philadelphia, Pa., Francis Ballard, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Paul A. Mueller, Lancaster, Pa., for defendant.

GRIM, District Judge.

This is a civil action for treble damages and injunctive relief brought by the United States of America against New Holland Machine Company for alleged overcharges in connection with the sale of baler twine in 1951. The Government formally withdrew its claim for treble damages at the conclusion of the trial without a jury and the question of an injunction has become moot. The Government is now claiming single damages in the sum of $17,499 for the sale of 6,140 bales of baler twine at prices allegedly in excess of the applicable ceiling prices under Office of Price Stabilization regulations.

Defendant, a Pennsylvania corporation with its principal office and place of business at New Holland, Lancaster County, Pennsylvania, is a large manufacturer of farm machinery including an automatic hay baler. To the dealers and distributors of its hay balers defendant sells at wholesale the necessary baler twine, which it obtains primarily from the Plymouth Cordage Company and from two secondary sources of supply. In 1951 defendant sold between 500,000 and 600,000 bales of baler twine for the net sum of $8,000,000. Ninety to ninety-five percent of the twine sold in 1951 was supplied in carload lots shipped directly from defendant's suppliers to its dealers and distributors, while the remainder of the twine was shipped from defendant's own warehouses where it maintains a comparatively small inventory for sale to its dealers and distributors in less than carload lots.

Pursuant to the authority granted by Section 704 of the Defense Production Act of 1950[1] the OPS issued a General Ceiling Price Regulation on January 26, 1951, published at 16 F.R. 808. Section 3 thereof provided, among other things, that, with respect to all non-exempt commodities, the ceiling price to be charged should be the highest price at which the goods were sold and delivered during the base period established by Section 1 of the same regulation. Section 2 prohibited the sale of any commodity in excess of the ceiling price thus established.

On May 28, 1951, the OPS issued Supplementary Regulation 29 to the General Ceiling Price Regulation, effective immediately and published at 16 F.R. 5011. SR–29 provided for an increase in ceiling prices to be charged by wholesalers (such as defendant) whose manufacturers had raised their prices pursuant to another regulation. On May 28, 1951, defendant's principal manufacturer-supplier of baler twine notified defendant of a price increase effective May 31, 1951. On May 31, 1951, after consultation with counsel and after notifying its more than 2,500 dealers and distributors throughout the nation, defendant in turn put its own price increase into effect.

With respect to carload lots shipped directly from defendant's suppliers to its dealers and distributors, defendant's price increase of May 31, 1951, has not been challenged by the OPS. But the OPS in the present action is attacking defendant's price increase with respect to the 6,140 bales of baler twine which were purchased at the supplier's old lower price and were in inventory in defendant's warehouses on May 31, 1951, when its supplier's new increased price went into effect.

Defendant has admitted the sale of these 6,140 bales at a total price which was $17,499 in excess of that charged during the base period as defined in the General Ceiling Price Regulation. These 6,140 bales were sold at the same new increased price as was the twine purchased by defendant from its supplier after the supplier's increased price went into effect.

The question to be determined is whether SR–29, the regulation permitting an increase in the ceiling price of

---

1. 64 Stat. 816, 50 U.S.C.A.Appendix, § 2154.

baler twine, was applicable only to twine purchased at the supplier's new increased price (as the Government contends) or was applicable also to twine purchased from that supplier before the effective date of the supplier's price increase and still in the wholesaler's (defendant's) inventory after the effective date of the supplier's price increase (as defendant contends).

The answer to this question lies in the language of SR–29, upon which both the Government and defendant rely and which reads as follows:

> "If your supplier has increased his price * * * you may recalculate your ceiling price for sale of that commodity when purchased from that supplier after the increase is put into effect."

Does this language mean that defendant was not permitted to recalculate (i. e., increase) its ceiling price for sale of that commodity (the 6,140 bales of twine in inventory) when purchased from its supplier *before* the supplier's increase was put into effect? The answer is yes. The clause "when purchased from that supplier after the increase is put into effect" is clearly a conditional clause, the word "when" being equivalent in meaning to if. SR–29 permitted a wholesaler such as defendant to increase his ceiling price on a commodity if two conditions were satisfied: (1) if his supplier had properly increased *his* price and (2) if the wholesaler had purchased the commodity in question at the supplier's new increased price.

Defendant contends, and the testimony indicates, that it has long been the custom or practice among baler twine wholesalers to make price adjustments to their customers effective immediately upon announcement of price changes by the manufacturer and that these price adjustments have been customarily applied to baler twine which is in the wholesaler's inventory on the effective date of the manufacturer's price increase. However, there was no statutory requirement that the OPS regulations had to conform with business and industry customs or practices, and in case of any inconsistency between regulation and custom the regulation would necessarily control.

Defendant also contends that if it had attempted to sell the 6,140 bales of twine after May 31, 1951, at the old lower price it would have been in a very awkward position with respect to its customers. It would have had to charge its customers a higher price for carload quantities shipped directly from the manufacturer than for less than carload lots taken from the 6,140 bales in inventory. This would have been a complete reversal of its customary pricing policies. But the fact that SR–29, if obeyed, would have created an awkward or inconvenient situation for defendant with respect to its May 31, 1951 inventory obviously did not render the regulation invalid. As Chief Justice Marshall stated in United States v. Fisher, 2 Cranch 358, 386, 6 U.S. 358, 386, 2 L.Ed. 304, "where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain; in which case it must be obeyed." After a careful reading of SR–29 its meaning becomes plain and unambiguous and consequently there is no problem of construction. Whether or not defendant's compliance with the regulation would have created difficulty in its relations with its customers is not germane to this action.

There is likewise no merit in defendant's contention that had it complied with the provisions of the regulations in accordance with my holdings above it would have violated the Robinson-Patman Act, 15 U.S.C.A. §§ 13–13b, 21a. Eugene Dietzgen Co. v. Federal Trade Comm., 7 Cir., 1944, 142 F.2d 321, certiorari denied 323 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 586.

Six months after the baler twine in question had been sold the OPS issued

Supplementary Regulation 89, effective February 8, 1952, which specifically covered ceiling prices for baler twine. Section 3(a) of SR–89 reads in pertinent part as follows:

"If your supplier has increased his list price for a twine pursuant to such regulations you may recalculate your ceiling price for sale of that type or brand of twine when purchased from that supplier after the increase is put into effect. The ceiling price arrived at as a result of your first calculation made under this supplementary regulation shall be your ceiling price for your entire inventory of that type or brand of twine unsold at the date of that recalculation * * *"

Defendant argues that SR–89, the 1952 regulation, merely spelled out and clarified SR–29, the 1951 regulation which was applicable to the sales in question. With this contention I do not agree. The language of SR–29 clearly set forth the general rule for computing price increases and made no exception to the general rule with respect to the problem of the wholesaler's pricing of lower-cost inventory on hand, when his supplier's increased prices went into effect. Such inventory, therefore, remained under the original price ceilings imposed by the General Ceiling Price Regulation. SR–89, the 1952 baler twine regulation, created an exception to the general price-increase rule of SR–29 with respect to the pricing of inventory. The new language in SR–89 changed, rather than explained, the rule of the earlier price-increase regulation with respect to inventory having the same status as the 6,140 bales in the present case.

Plaintiff is therefore entitled to recover the sum of $17,499 from the defendant.

The statements of fact and law contained in the foregoing opinion will constitute findings of fact and conclusions of law in the case. Plaintiff's requests for findings of fact Nos. 4 to 8, inclusive, and its requests for conclusions of law Nos. 1, 2 and 3 are affirmed and adopted as additional findings of fact and conclusions of law.

Judgment may be entered in favor of plaintiff and against defendant in the amount of $17,499 plus costs.